RUSS, AUGUST & KABAT
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Brian D. Ledahl (CA SBN 186579)
bledahl@raklaw.com
Benjamin T. Wang (CA SBN 228712)
bwang@raklaw.com
Kent N. Shum (CA SBN 259189)
kshum@raklaw.com
Paul A. Kroeger (SBN 229074)
pkroeger@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff*
PROVEN NETWORKS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PROVEN NETWORKS, LLC<br><br>        *Plaintiff*,<br><br>        *v.*<br><br>F5 NETWORKS, INC.,<br><br><br>        *Defendant*. | **Case No. 3:20-cv-02521-SI**<br><br>**PLAINTIFF PROVEN NETWORKS, LLC'S OPPOSITION TO DEFENDANT F5 NETWORKS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: October 15, 2020<br>Time: 1:30 p.m.<br>Judge: Hon. Lucy H. Koh<br>Dept.: Courtroom 8<br><br>**DEMAND FOR JURY TRIAL** |

RUSS, AUGUST & KABAT

**OPPOSITION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

## TABLE OF CONTENTS

I.      INTRODUCTION ..............................................................................................................1

II.     The '507 PATENT.............................................................................................................1

    A.      The Problems Addressed And Solutions Presented By The
'507 Patent ........................................................................................................................1

    B.      *Alice* Step One: An Infinity Rate-Limit Check In A Hierarchical
Rate-Limiting Scheme To Enable Borrowing Of Bandwidth Available At Higher
Layers In A Computer Network Is Not An Abstract Idea ...................................................4

    C.      *Alice* Step Two: An Infinity Rate-Limit Check Is An
Inventive Concept ............................................................................................................8

III.    THE OTHER PATENTS-IN-SUIT ARE ELIGIBLE UNDER §101 .............................9

IV.     REQUEST FOR LEAVE TO AMEND...........................................................................9

V.      CONCLUSION................................................................................................................10

i

RUSS, AUGUST & KABAT

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. v. CLS Bank Intern.*,
     573 U.S. 208 (2014) ...................................................................4, 7

*Ancora Techs., Inc. v. HTC Am., Inc.*,
     908 F.3d 1343 (Fed. Cir. 2018)...................................................4, 9

*Berkheimer v. HP Inc.*,
     881 F.3d 1360 (Fed. Cir. 2018)..................................................8, 10

*Eminence Capital, LLC v. Aspeon, Inc.*,
     316 F.3d 1048 (9th Cir. 2003).........................................................10

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
     955 F.3d 1317 (Fed. Cir. 2020).........................................................6

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
     839 F.3d 1089 (Fed. Cir. 2016).........................................................6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
     879 F.3d 1299 (Fed. Cir. 2018).........................................................5

*Intellectual Ventures I LLC v. Symantec Corp.*,
     838 F.3d 1307 (Fed. Cir. 2016).........................................................6

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
     2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015)....................................6

*Mayo Collaborative Servs. v Prometheus Labs., Inc.*,
     566 U.S. 66 (2012) ......................................................................4, 8

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
     Case No. 2016-2041 (Fed. Cir. 2020)...............................................7

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
     873 F.3d 1364 (Fed. Cir. 2017).........................................................6

*Square, Inc. v. Protegrity Corp.*,
     CBM2014-00182, Paper 60 (U.S.P.T.O. Mar. 2, 2016) ...................6

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
     930 F.3d 1295 (Fed. Cir. 2019).........................................................7

*Uniloc USA, Inc. v. ADP, LLC*,
     772 F. App'x 890 (Fed. Cir. 2019).....................................................3

**OPPOSITION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT

## I.    INTRODUCTION

This brief opposes the motion to dismiss brought by defendant F5 Networks, Inc., which is a piggy-back motion that incorporates by reference in full a similar motion filed by defendant Extreme Networks, Inc. in the related case 20-cv-2067-LHK. The motion also adds an analysis of one patent unique to this case against F5, the '507 patent. Proven opposes both motions and rather than repeat its opposition arguments from its brief in the Extreme Networks case it incorporates them in full in this opposition. This brief therefore focuses on the '507 patent.

The '507 patent is directed to an "infinity rate-limit check." A technological innovation that did not exist until the four computer engineering inventors from now Alcatel-Lucent conceived and applied for the '507 patent. Their "infinity rate-limit check" was a novel and efficient way to improve the management of data transmissions in a computer network. It essentially overrides rate-limits that network administrators impose at the various layers of a computer network, and in so doing allows extra bandwidth to be shared among the layers even when any one specific layer is oversubscribed (or over its allocated bandwidth limits). While there were certainly other ways to manage bandwidth in a network, there were none like this, and defendant cannot prove and has no proof otherwise.

The infinity rate-limit check of the '507 patent is not an abstract idea, it was simply an unheard of idea at the time, and it is an inventive concept, as will be explained in detail below. Defendant F5's motion should therefore be denied.

## II.    THE '507 PATENT

### A.    The Problems Addressed And Solutions Presented By The '507 Patent

Computer networks are not limitless mediums. They have finite capacities and limits on the maximum rate of data that can be transferred across the network, what is often broadly referred to as bandwidth. And at each of the various layers in a network, of which there may be many, there are further bandwidth limits (*e.g.*, the Port, IP subnet, Protocol, and Socket layers). Bandwidth limitations in a network are a product of the underlying network architecture, and allocations that may be made at each layer. Due to the inherent limits on the amount of available bandwidth in a

1
**OPPOSITION**

1   given network, computer engineers have developed countless strategies to optimize network

2   traffic, whether through hardware, software or a combination of the two.

3       Amongst the universe of ways to optimize a computer network, the '507 patent targets the

4   management of traffic streams from network nodes through rate-limiting. Rate-limiting is a

5   process of limiting the amount of traffic that is allowed from a network node. Ex. A at 1:19-21.

6   Rate limiting may be applied in a hierarchical scheme, meaning that rate-limits are applied to

7   different layers of a data flow or different classifications or subclassifications of the data in a data

8   stream. *Id.* In the '507 patent, one example is that traffic at the Socket level must not exceed 20

9   Megabits per second, traffic at the Protocol level must not exceed 100 Megabits per second, "traffic

10  at the IP subnet (IP1) level ... must not exceed 500 Megabits per second and the overall traffic at

11  the port level ... must not exceed 1 Gigabit per second." *Id.* at Fig. 2, 5:13-16.

12      Through the use of rate-limits, network providers can manage the amount of traffic in the

13  computer network to optimize network performance. If a node exceeds a given rate-limit, or traffic

14  at a certain classification becomes oversubscribed, network systems may then de-prioritize the

15  data packet, hold it, or drop it to relieve the amount of traffic. *Id.* at 5:55-63, 10:7-11. In a

16  hierarchical rate-limiting scheme, the traffic stream must pass each rate-limit associated with its

17  classifications, in which case the traffic is given an "overall" pass to proceed.

18      Hierarchical rate-limiting schemes themselves, however, are prone to inefficiencies. A

19  particular data flow might fail one or more of its rate limits when there might still be network

20  bandwidth allocated to different layers that are available. Network engineers therefore

21  implemented borrowing schemes to allow classifications at various layers to "borrow available

22  bandwidth from the allocated rate limit of their parent classification." *Id.* at 1:50-55. At the time

23  of the invention there were software schemes to enable rate-limiting borrowing schemes, and more

24  problematic hardware implementations of the same. *Id.* at 1:49-2:3. Hardware approaches were

25  considered more difficult and caused "additional latency for the traffic and/or additional

26  complexity in hardware to [reallocate bandwidth] at the desired speeds." *Id.* at 1:64-2:3.

27      The inventors of the '507 patent, computer network experts at Alcatel-Lucent, invented a

28  new hierarchical rate-limiting scheme using what they called an "infinity rate-limit check." "The

RUSS, AUGUST & KABAT

2

**OPPOSITION**

RUSS, AUGUST & KABAT

infinity rate-limit rule extends the life of [a] packet so that the ultimate determination of whether or not to grant an overall pass to the packet is made in a higher classification level than the traffic classification level in which the packet did not receive a pass. That is, the infinity rate-limit rule grants an automatic pass to the packet at the child classification level regardless of the outcome of the rate-limit check of the child classification level .... By granting an automatic pass to the packet at the child classification level, **the infinity rate-limit rule enables available bandwidth to be borrowed from the parent classification level so that the packet receives an overall pass, regardless of whether the packet passed the rate-limiting rule of the child classification level**." *Id.* at 5:27-39 (emphasis added). The "infinity rate-limit check" ensures that so long as a packet passes the rate-limit associated with its highest associated classification, and there is available bandwidth, the packet will be able to borrow that bandwidth so that it may continue through the network. Contemporaneous hierarchical rate-limiting schemes lacked this "infinity rate-limit check" and lacked the ability to provide an "overall" pass even if a packet failed a lower level rate-limit check. *See* Ex. B at 2 (Patent Office's Notice of Allowability).[1]

Claim 1 of the '507 patent, representative for purposes of this motion, recites:

1. A method for rate-limiting a traffic stream using a rate-limit hierarchy at a network node comprising:

subjecting a packet to a first rate-limit check, said first rate-limit check corresponding to a first-level traffic classification;

subjecting said packet to a second rate-limit check and an infinity rate-limit check, said second rate-limit check and said infinity rate-limit check corresponding to a second-level traffic classification;

granting an automatic pass to said packet from said infinity rate-limit check regardless of whether or not said packet passes said second rate-limit check; and

granting an overall pass of said rate-limit hierarchy if said packet passes said first rate-limit check, even if said packet fails said second rate-limit check.

---

[1] All exhibits are attached to the Declaration of Benjamin T. Wang filed in conjunction herewith. Proven requests judicial notice of excerpts from the prosecution histories of the '507 patent (Exhibits B-D), which are intrinsic to the patent and matters of public record, and properly subject to judicial notice. *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 897–98 n.3 (Fed. Cir. 2019).

3

RUSS, AUGUST & KABAT

**B.** *Alice* **Step One: An Infinity Rate-Limit Check In A Hierarchical Rate-Limiting Scheme To Enable Borrowing Of Bandwidth Available At Higher Layers In A Computer Network Is Not An Abstract Idea**

The claims of the '507 patent are directed to an infinity rate-limit check in a hierarchical rate-limiting scheme to enable borrowing of bandwidth available at higher layers in the network. The infinity rate-limit check enables bandwidth borrowing from higher packet classification levels even if the packet fails a lower level rate-limit check. The infinity rate-limit check was a new, specific computer technique that improved computer networks by ensuring a more efficient use of available bandwidth. By using an infinity rate-limit check, network administrators can override a failed rate-limit check at a given classification and still ensure the packet receives an overall pass if the rate-limit check for the layer above is passed.

Defendant, however, argues that the '507 patent claims are directed to, perhaps the first ever, abstract idea of "applying rate-limit rules to a stream of data in a computer network." Mot. at 7. At the threshold, that characterization strays far from any common sense understanding of an abstract idea, which the Supreme Court has defined as a "building block[] of human ingenuity" or "basic tool[] of scientific and technological work." *Alice Corp. v. CLS Bank Intern.*, 573 U.S. 208, 216 (2014); *Mayo Collaborative Servs. v Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). But more specifically, and critically, defendant's abstract idea completely omits the "infinity rate-limit check," even though defendant itself concedes that it is "the **focus** of the '507 claims ...." Mot. at 8 (emphasis added). And precedent makes clear that step one requires an analysis of the "patent's claimed advance," and whether the claims are "sufficiently focused on such improvements," but defendant has failed that undertaking. *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018) (internal quotations omitted).

Defendant's likely never-before-heard-of abstract idea conflates the infinity-rate limit check with any other rate-limit rule. The infinity rate-limit check, however, is the claimed advance of the '507 patent, what distinguished it from prior art rate-limit schemes, and what led to the allowance of the '507 patent claims by the Patent Office. Ex. B at 2. Indeed, although it has the term "rate-limit" in its name, the infinity rate-limit check is in a way a misnomer in that it effectively overrides the rate-limit for the classification for which it is associated. For instance, a

first rate-limit check at the Port level combined with an infinity rate-limit check at that same level, will result in a rate-limit Pass at that level, even if the packet otherwise would have failed the first rate-limit check. But the fact that the infinity rate-limit check essentially overrides a fail of the first rate-limit check does not mean it is "non-existent," as defendant argues. Mot. at 8. Rather, it confirms that defendant errs in characterizing the infinity rate-limit check as a generic "rate-limit rule."

Defendant's attempt to dismiss the infinity-rate limit check as not explained and abstract in itself also fails. The '507 patent expressly and specifically explains how the infinity-rate limit check works: "**The infinity rate-limit rule extends the life of [a] packet so that the ultimate determination of whether or not to grant an overall pass to the packet is made in a higher classification level than the traffic classification level in which the packet did not receive a pass**. That is, the infinity rate-limit rule **grants an automatic pass to the packet at the child classification level regardless of the outcome of the rate-limit check of the child classification level** .... By granting an automatic pass to the packet at the child classification level, the infinity rate-limit rule enables available bandwidth to be borrowed from the parent classification level so that the packet receives an overall pass, regardless of whether the packet passed the rate-limiting rule of the child classification level." Ex. A at 5:27-39 (emphasis added); *see also id.* at 2:32-42. And the inventors explained the improvements to the computer network in that "[u]tilizing infinity rate-limit rules to allow borrowing of bandwidth from an infinity rate-limit check enables more efficient combinatorial rate limiting (*i.e.*, for packets belonging to more than one classification of traffic) and enables hierarchal rate-limiting to be implemented economically, efficiently, and with minimal packet latency in hardware." *Id.* at 3:20-26.

Moreover, use of the '507 patent's infinity rate-limit check resulted in a new kind of hierarchical rate-limit scheme that enabled computer networks to reallocate, or borrow, available bandwidth **in a manner that was not done before**. *See Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1305 (Fed. Cir. 2018) ("a new kind of file that enables a computer security system to do things it could not do before"). The Patent Office expressly recognized this in its Notice of Allowability, stating that "[t]he prior art of record fails to teach or make obvious the steps of or

1  means for 'granting an overall pass of said rate-limit hierarchy if said packet passes said first rate-

2  limit check, even if said packets fails second rate-limit check', when the granting is considered

3  within the specific combination of steps recited in the method of claim 1." Ex. B at 2. And

4  consistent with that finding, the inventors explained during the prosecution that other hierarchical

5  rate-limit scheme at the time did not grant packets an overall pass "even if said packet fails said

6  second rate-limit check." Ex. C at 7; *see also* Ex. D at 7.

7      It is because the infinity rate-limit check is a new and specific technique for managing

8  traffic in computer networks that distinguishes the '507 patent from the claims in the cases relied

9  upon by defendant. In those cases, the claims failed because they were no different than generic

10  activities that had been done before. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd*., 955

11  F.3d 1317, 1328 (Fed. Cir. 2020) ("claims [were] silent as to how access [was] controlled");

12  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313-1315 (Fed. Cir. 2016)

13  ("receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers,

14  and communicating the characterization" merely "use[d] generic computers to perform generic

15  computer functions"); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1372

16  (Fed. Cir. 2017) ("the Asserted Claims are directed to the formation of financial transactions in a

17  particular field (i.e., mass transit) and data collection related to such transactions. The Asserted

18  Claims are not directed to a new type of bankcard, turnstile, or database, nor do the claims provide

19  a method for processing data that improves existing technological processes. Rather, the claims

20  are directed to the collection, storage, and recognition of data."); *FairWarning IP, LLC v. Iatric

21  Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) ("claims merely implement an old practice in a

22  new environment"); *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, 2015 WL 1941331,

23  at *8 (S.D.N.Y. Apr. 28, 2015) ("patent does not describe the nature of the rule, what in the header

24  or payload determines the rule to be selected, how the rule determines who may access the packet

25  and to what degree, or anything about the rule itself"); *Square, Inc. v. Protegrity Corp.*, CBM2014-

26  00182, Paper 60, at 30 (U.S.P.T.O. Mar. 2, 2016) (finding claims abstract because specificity

27  argued by the patent owner were "elements not required by the claims"). In contrast, the inventors

28

RUSS, AUGUST & KABAT

**OPPOSITION**

of the '507 patent expressly claimed their new "infinity rate-limit check," disclosed how it operates, and explained how it improved the management of computer networks of the time.

In fact, just last week, the Federal Circuit affirmed the eligibility of other claims for computer network monitoring. *Packet Intelligence LLC v. NetScout Systems, Inc.*, Case No. 2016-2041 (Fed. Cir. 2020); Ex. E at 2. The Court emphasized the need to review claims as a whole, to consider whether the "focus" of the claims is on a specific "asserted" improvement in computer capabilities, and reiterated that "software-based innovations can make non-abstract improvements to computer technology and be deemed patent-eligible at step 1." *Id.* at 13 (internal quotation marks omitted). The Court explained that the claims detailed how they solved the technological problem of disjointed connection flows in a computer network by using a "parser" to extract information from a data packet, using the information to check for a match in memory, and updating the memory if there is a match or creating a new entry in memory if there is no match. *Id.* at 14. And the Court relied on the specification's disclosure that prior art systems were unable to address this problem, and that the claimed technological features functioned together to provide "a more granular, nuanced and useful classification of network traffic." *Id.* at 14-15. The Court also found the claims consistent with the patent eligible claims in *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295 (Fed. Cir. 2019) that were "drawn to a method of hierarchical computer network monitoring." Ex. E at 13.

Similarly, the '507 patent explains, in its claims and specification, the drawbacks with prior art network management systems, and how the specific requirements of the claims solved those problems with a novel "infinity rate-limit check" applied to data packets in a computer network to grant an automatic pass at the applicable network layer, and an overall pass if the packet also passes the first rate-limit check. Defendant's motion cannot be squared with the holdings in *Packet Intelligence* and *SRI* affirming the patent eligibility of similarly specific and improved computer network monitoring systems.

Finally, although the concern that "undergirds" and "drives th[e] [abstract idea] exclusionary principle [is] one of pre-emption" in order to avoid monopolizing the "building blocks of human ingenuity" and "basic tools of scientific and technological work," *Alice Corp.*,

RUSS, AUGUST & KABAT

7

**OPPOSITION**

573 U.S. at 216; *Mayo Collaborative Servs. v Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012), defendant does not allege there is any such risk here and does not even mention pre-emption in its motion. And the record makes clear that there is no such risk. The patent itself acknowledges, as confirmed by its prosecution history, alternative hierarchical rate-limiting schemes. The lack of pre-emption risk confirms the claims are not directed to an abstract idea.

The '507 patent claims are directed to a specific, improved hierarchical rate-limit scheme that addresses problems unique to computer networks with bandwidth constraints at various network layers using a new infinity rate-limit check that is rooted in computer technology. It is not directed to an abstract idea under step one.

### C. *Alice* Step Two: An Infinity Rate-Limit Check Is An Inventive Concept

The '507 patent is eligible under §101 even if the analysis proceeds to *Alice* step two. Under *Alice* step two, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

Here, the patent and its prosecution history confirms that the "infinity rate-limit check" of the '507 patent was not a well-understood, routine or conventional technique for managing traffic in a computer network. The patent, for instance, confirms that the "infinity rate-limit check" resulted in a new and improved computer network: "[u]tilizing infinity rate-limit rules to allow borrowing of bandwidth from an infinity rate-limit check **enables more efficient combinatorial rate limiting** (*i.e.*, for packets belonging to more than one classification of traffic) and **enables hierarchal rate-limiting to be implemented economically, efficiently, and with minimal packet latency** in hardware." Ex. A at 3:20-26 (emphasis added). And, as discussed above, the inventors repeatedly explained during prosecution that it was the novel use of the infinity rate-limit check that enabled functions that did not exist in hierarchical rate-limit schemes of the time. Ex. C at 7 (explaining that prior art did not grant packets an overall pass "even if said packet fails said second rate-limit check"); Ex. D at 7 (same). The Patent Office agreed, stating in its Notice of Allowability that "[t]he prior art of record fails to teach or make obvious the steps of or means

RUSS, AUGUST & KABAT

8

**OPPOSITION**

for 'granting an overall pass of said rate-limit hierarchy if said packet passes said first rate-limit check, even if said packets fails second rate-limit check', when the granting is considered within the specific combination of steps recited in the method of claim 1." Ex. B at 2. The record confirms that the '507 patent describes and claims an inventive concept. *See Ancora Techs., Inc.*, 908 F.3d at 1349 (relying on Patent Office's notice of allowance and the applicants' arguments to examiner in analyzing eligibility).

Defendant's approach to step two in insisting on specialized hardware for borrowing bandwidth or applying the infinity rate-limit check misses the mark. It is the infinity rate-limit check and its application that is inventive, and the patent and prosecution history expressly explain how it works and how it results in an inventive and improved hierarchal rate-limit scheme and computer network in which such scheme is implemented. And, in any event, "[c]omputers are improved not only through changes in hardware; '[s]oftware can make non-abstract improvements to computer technology.'" *Id.* at 1347.

Moreover, because defendant fails to recognize the innovative infinity rate-limit check, it misapplies the machine-or-transformation test. The specific claimed use of the infinity rate-limit check transforms computer network management systems to yield an improved computer network that more efficiently allocates bandwidth amongst various network layers when layers to which the infinity rate-limit check is applied become oversubscribed.

The '507 patent claims describe an inventive infinity rate-limit check that was not well-understood, routine or conventional, satisfying Step Two of *Alice*, and are eligible under §101.

### III.   THE OTHER PATENTS-IN-SUIT ARE ELIGIBLE UNDER §101

Defendant also challenges the three other patents-in-suit by adopting the motion filed by defendant Extreme Networks, Inc.'s motion in related case 20-cv-2067-LJK. Mot. at 15. Because defendant simply adopts in full Extreme's motion and makes no additional new arguments, Proven incorporates its opposition to Extreme's motion herein in full as its response.

### IV.   REQUEST FOR LEAVE TO AMEND

If the Court finds any of the patents-in-suit ineligible under §101, Proven requests leave to amend its complaint. Rule 15 is applied "with extreme liberality," and, in the absence of any

9

OPPOSITION

RUSS, AUGUST & KABAT

1   improper conduct or undue prejudice, "leave shall be freely given ...." *Eminence Capital, LLC v.*

2   *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). In light of the highly technical context and

3   computer devices involved in the patents, Proven would amend by presenting factual allegations

4   and expert evidence that the inventions recite specific improvements to computer technology, and

5   were not well-understood, routine or conventional. *See Berkheimer* 1369 ("whether a claim ... is

6   well-understood, routine and conventional ... is a question of fact"). In addition, although claim

7   construction has not occurred, terms of art are used throughout the claims and patents, and to the

8   extent any concepts are unclear on the current record, Proven would submit fact and expert

9   evidence on how they would be understood by those in the art to demonstrate that the claims

10  describe specific improvements and inventive concepts.

## V.    CONCLUSION

12         For the reasons above, defendant's motion should be denied, or leave to amend granted.

14  Dated: July 23, 2020                     Respectfully submitted,

15                                           */s/ Reza Mirzaie*

16                                           Reza Mirzaie (CA SBN 246953)
                                             rmirzaie@raklaw.com
17                                           Marc A. Fenster (CA SBN 181067)
                                             mfenster@raklaw.com
18                                           Brian D. Ledahl (CA SBN 186579)
                                             bledahl@raklaw.com
19                                           Benjamin T. Wang (CA SBN 228712)
                                             bwang@raklaw.com
20                                           Kent N. Shum (CA SBN 259189)
                                             kshum@raklaw.com
21                                           Paul A. Kroeger (SBN 229074)
                                             pkroeger@raklaw.com
22                                           Jonathan Ma (CA SBN 312773)
                                             jma@raklaw.com
23                                           RUSS AUGUST & KABAT
                                             12424 Wilshire Blvd. 12th Floor
24                                           Los Angeles, CA 90025
                                             Phone: (310) 826-7474
25
26                                           ***Attorneys for Plaintiff Proven Networks, LLC***

27

28

RUSS, AUGUST & KABAT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

 I certify that counsel of record is being served on July 23, 2020, with a copy of this document via Electronic Mail and on this date.

<u>/s/ <em>Reza Mirzaie</em>  </u>

**OPPOSITION**